Robert **WILBUR**, Plaintiff,

v.

**CENTRAL INTELLIGENCE AGENCY**, Defendant.

No. CIV.A.01–0458 RMC.

United States District Court, District of Columbia.

April 8, 2003.

Robert Wilbur, Ringoes, NJ, pro se.

Wyneva Johnson, U.S. Attorney's Office, Washington, DC, for C.I.A.

## MEMORANDUM OPINION

COLLYER, District Judge.

Robert Wilbur has been trying, since at least 1994, to use official government channels to obtain copies of records concerning himself that he is confident are held by the Central Intelligence Agency ("CIA"). The CIA has searched its records and identified only one document concerning Mr. Wilbur. Because he is dissatisfied with this result, Mr. Wilbur has brought suit here, *pro se*, to force a broader search. Pending before the Court is the CIA's Motion to Dismiss or, Alternatively, for Summary Judgment based on the adequacy of its search for records. For the reasons set forth below, the Court will grant the CIA's Motion for Summary Judgment.

## I. BACKGROUND

Mr. Wilbur served in the United States Navy during World War II and until December 1, 1945.[1] Upon his release, he enrolled at the University of Chicago and remained there from January 1946 until May 1947, when he transferred to Lafayette College. He asserts that several of his classmates at the University of Chicago were actively recruiting for the Office of Strategic Services, a predecessor to the CIA, and that "[a]n adversarial report was turned in in retaliation for [his] refusal" to join. Compl. at 1. While he had been assured that his admittance to Lafayette College would be easy, in fact there was resistance when he interviewed with the Lafayette Admissions Committee. Just prior to his graduation, one of the members of that committee explained that the problem had been due to the fact that "there was something derogatory on my record with which he did not agree because it was not supported by anything concrete." *Id.* at 2.

Mr. Wilbur began his quest by asking the CIA for information in 1976 or 1977. In response, the Information and Privacy Coordinator for the CIA sent "the only document which we have pertaining to [Mr. Wilbur, which] is a photocopy of an envelope and letter, date 11 July 1961, from Robert O. Wilbur to Nikita S. Khrushchev, Chairman of the Council of Ministers, The Kremlin, Moscow, USSR." Exhibit to Compl. In his Complaint, Mr. Wilbur asserts that this letter was "stolen out of the United States Mails under the illegal government programs designated by acronyms 'HT–LINGUAL' and 'HUNTER[.]'" Compl. at 2.

More recently, in February 1994, Mr. Wilbur sought to submit a request for documents to the CIA under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Once it received the appropriate privacy waiver forms and certification of identity, the CIA accepted the request by letter dated May 13, 1994. The search for records concerning Mr. Wilbur focused on two CIA Directorates that were determined to be most likely to have responsive records, the Directorate of Operations

---

**1.** The facts concerning Mr. Wilbur's background are taken from his Complaint and other pleadings. The facts concerning the CIA's search are taken from its affidavits, neither of which is contested by Mr. Wilbur.

("DO") and the Directorate of Administration ("DA"). "The DO is the CIA component responsible for the clandestine collection of foreign intelligence information from human sources" and its records "contain[ ] information on persons who are of foreign intelligence or counterintelligence interest to the CIA . . . ." Declaration of Kathryn I. Dyer ¶ 12 ("Dyer Decl."). The search used Mr. Wilbur's first and last names and included a cross-reference to his date of birth. No responsive records were located. The DA is responsible for the CIA's administrative matters and "maintains records on all current and former employees of the CIA, whether employed in a contract or staff capacity, as well as other individuals for whom security processing or evaluation was required." *Id.* ¶ 13. Using Mr. Wilbur's first and last names and birth date, the DA located no responsive records. *Id.* The CIA advised Mr. Wilbur on June 28, 1994, that it was unable to identify any information or records filed under his name. Its letter advised Mr. Wilbur of his appeal rights.

Mr. Wilbur did not submit an appeal until January 4, 1999. Nonetheless, the CIA advised him that his request for an appeal had been received and accepted for consideration. By letter dated September 14, 2000, the CIA responded to the appeal with the information that the appropriate members of the Agency Release Panel, the Information Review Officers for the Director of Central Intelligence area, the DO, and the DA had advised that no documents were located despite their searches. The Agency Release Panel thus affirmed the earlier determination that there were no responsive documents and advised Mr. Wilbur of his right to seek judicial review.

Mr. Wilbur filed the instant Complaint on February 28, 2001. He seeks to know the accusation and accuser against him at Lafayette College, why his name was allegedly placed on a watch list, and the bases for CIA review of his mail. The CIA filed its Motion to Dismiss or, Alternatively, for Summary Judgment on April 13, 2001. Mr. Wilbur filed his Opposition on May 2, 2001, and the CIA filed its Reply on May 7, 2001. Thereafter, on May 31, 2001, Mr. Wilbur filed an Answer to the CIA's Reply, to which the CIA filed an Opposition on July 23, 2001. Being fully briefed on the issues, the Court is ready to decide this matter.

## II. LEGAL STANDARDS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving by a preponderance of the evidence that a court has subject matter jurisdiction to hear a case. *See Jones v. Exec. Office of President*, 167 F.Supp.2d 10, 13 (D.D.C.2001). In reviewing a motion to dismiss for lack of jurisdiction, a court must accept as true all of the factual allegations set forth in the complaint; however, such allegations " 'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13–14 (D.D.C.2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350). The Court may consider matters outside the pleadings. *See Lipsman v. Sec'y of the Army*, 257 F.Supp.2d 3, 6 (D.D.C.2003).

A court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment will not lie "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the moving

party bears the burden of showing the absence of any genuine issue of material fact, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) (set of internal quotation marks omitted).

### III. ANALYSIS

#### A. Dismissal Under Rule 12(b)(1)

█ The CIA makes two connected arguments in its motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure: (1) Mr. Wilbur failed to file his Complaint before the applicable statute of limitations expired, and (2) he failed to exhaust his administrative remedies properly. Taking the last point first, it is clear that exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA. *See Oglesby v. Dep't of the Army*, 920 F.2d 57, 61–64 (D.C.Cir.1990). This means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response. *See id.* at 65 n. 9. If the requester did not timely appeal through the agency's internal processes, a court is deprived of subject-matter jurisdiction to review any lawsuit and must dismiss. *See Kessler v. United States*, 899 F.Supp. 644, 645 (D.D.C.1995).

█ The FOIA regulations of the CIA require an administrative appeal within forty-five days of the agency's initial decision on a FOIA request. *See* 32 C.F.R. § 1900. The CIA's initial determination here was dated June 28, 1994, and Mr. Wilbur's administrative appeal was dated

January 4, 1999, more than four years later. Thus, his appeal was late—as if it were never filed at all—and he can be deemed to have failed to exhaust his administrative appeal rights.

The CIA also argues that the applicable statute of limitations for FOIA actions is six years under 28 U.S.C. § 2401(a). *See Spannaus v. Dep't of Justice*, 824 F.2d 52 (D.C.Cir.1987). Measuring the time since its June 1994 final response to Mr. Wilbur's FOIA request, and even granting additional time for the administrative process, the CIA argues that this lawsuit, filed on February 28, 2001, was untimely.

Mr. Wilbur explains that he sought legal counsel for many years prior to 1976 and, between 1976 and 1998, that he had been represented by four different attorneys, each of whom withdrew from the representation for unstated reasons. He argues that he "has no power of control over other attorneys, and thus over TIMELINESS." Opposition to Defendant's Motion to Dismiss and/or Summary Judgment at 3 ("Opposition") (emphasis in original).

█ The Court finds that Mr. Wilbur's explanation is insufficient to make this Complaint timely under the applicable regulations and case law. Recognizing that he is now proceeding *pro se* without the benefit of counsel, and therefore is entitled to a certain leeway with court rules and procedures, it is nonetheless clear that he had counsel at various times at least up until 1998. His administrative appeal of the CIA's June 1994 letter was due in 1994. Assuming there were a gap in Mr. Wilbur's representation that might have tolled the 45–day period for such an appeal, it was up to him or his counsel to make that argument on a more timely basis rather than over six years later. Although Mr. Wilbur is now without a lawyer, he is still required to follow the basic rules of court procedure. *See generally*

*Ueding v. Dep't of Defense,* No. 97–2668, 1998 U.S. Dist. LEXIS 6095, at *2 (D.D.C. Apr. 29, 1998) ("Even *pro se* litigants … must comply with the Federal Rules of Civil Procedure.").

For these reasons, the Court has sufficient grounds to grant the CIA's motion to dismiss under Rule 12(b)(1).

### B.  Summary Judgment under Rule 56

█ Despite finding in favor of the CIA's Rule 12(b)(1) motion, the Court addresses the CIA's alternative motion pursuant to Rule 56 of the Federal Rules of Civil Procedure due to the fact that the CIA *accepted* Mr. Wilbur's very late-filed appeal and treated it as if it were timely. Even if this action constituted a waiver of Mr. Wilbur's failure to exhaust his administrative remedies in a timely fashion—which, in turn, might somehow also toll the statute of limitations—this case is subject to summary judgment because there are no genuine issues of material fact and the CIA is entitled to a judgment as a matter of law.

█ Summary judgment is available to a FOIA defendant when the agency demonstrates that it has fully discharged its obligations under FOIA by showing "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n, Inc. v. Fed. Communications Comm'n,* 479 F.2d 183, 186 (D.C.Cir.1973). When, as here, a plaintiff challenges the adequacy of an agency's search, the agency's burden is to establish beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant records. *See Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984). The issue is not whether there might possibly exist other records that are responsive to the request, but whether the search was adequate, judged by a reasonableness standard. *See id.*

Summary judgment is appropriate when the agency submits a " 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched' " unless "a review of the record raises substantial doubt" about the adequacy of the search. *Valencia–Lucena v. Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999) (quoting *Oglesby v. Dep't of the Army,* 920 F.2d at 68). "The agency is not required to speculate about potential leads." *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C.Cir.1996). It is, however, required "to follow through on obvious leads to discover requested documents." *Valencia–Lucena,* 180 F.3d at 325.

The CIA has described a search focused on the two CIA Directorates determined by it to be the most likely to have responsive records.  Upon Mr. Wilbur's appeal, the initial searches were re-examined and the Director of Central Intelligence area was directed to conduct a search of its records. *See* Dyer Decl. ¶ 16.  No responsive documents were located.

Mr. Wilbur protests that his name was on the agency Lingual Watch List maintained by the Office of Security until September 1975, as demonstrated by its production of a photocopy of his letter to Mr. Khrushchev.  He asserts that this provides proof that the CIA maintained a secret file on him.  In his Answer to the CIA's Reply to Plaintiff's Opposition, Mr. Wilbur further asserts that individuals placed on the secret Lingual Watch List "had been placed there by the Agency's own determination that such persons were counter-intelligence risk …, establishing of necessity that CIA possessed other, additional, and persuasive information ratifying the need of additional evidence to confirm its belief that the individual was a danger to the United States." Answer at

2. He alleges that there is "a bonanza of search locations available" by identifying recipients of various internal CIA memos.[2] *Id.* at 4.

The CIA opposed Mr. Wilbur's unauthorized filing of the Answer, but also provided a second affidavit responding to his allegations. All of the components identified by Mr. Wilbur and noted below "are or were components of the Directorate of Operations and the Directorate of Administration," which were previously searched for responsive documents. Opposition to Plaintiff's "Answer" at 3; 2nd Dyer Decl. ¶ 6. It further explains that "[o]n April 8, 1994, all HT/LINGUAL files and indexes held by the Office of Security, a component of the Directorate of Administration, were destroyed in accordance with guidelines set forth in National Archives and Records Administration-approved records control schedules." Opposition to Plaintiff's "Answer" at 3; 2nd Dyer Decl. ¶ 5.

Although Mr. Wilbur has identified specific offices and files that might be searched for responsive documents, the CIA has fully explained the nature of its search and the unavailability of the specific offices and files that were named. Whatever additional documents might have existed that referenced or concerned Mr. Wilbur, it appears that they have been destroyed.[3]

## IV. CONCLUSION

The Court concludes that the CIA has conducted a thorough, reasonable, good-faith search of the CIA components that were reasonably likely to maintain records of the type sought by Mr. Wilbur. The mere fact that no records were located is not the measure of an adequate search. Accordingly, the Court will grant the CIA's Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

## *ORDER*

For the reasons stated in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. It is

**FURTHER ORDERED** that all other pending motions are **DENIED** as moot. It is

**FURTHER ORDERED** that this Order shall constitute a **FINAL JUDGMENT** in this case. This is a final appealable Order. *See* FED. R. APP. P. 4(a).

**SO ORDERED.**

---

2. Mr. Wilbur identifies the following: SR/CE/P/IEL; RI/RI; SR/RISB/A; CI/SIG; SR/PA; RID/ANS; SR/CE; SR6 SUP; RI/Files; SR/2; CI/Staff; SR/9; CI/ICG; RID/AN; SR4/FE; RI/MIS; CI/OPS; SR/CI, without further explanation.

3. Mr. Wilbur also complains that the CIA did not search its records to locate documents that reference other persons he names as having been involved in the University of Chicago/Lafayette College matter. His request for documents did not cover anyone other than himself and the Court cannot fault the CIA for dealing only with the specifics of his request.