**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FLORENT BAYALA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 14-00007 (RC) |
| | : | |
| v. | : | Re Document Nos.: 14, 18 |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| HOMELAND SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM & ORDER

GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Florent Bayala

("Bayala") requested various materials from the U.S. Department of Homeland Security

("DHS").  After DHS disclosed certain documents but withheld others, Bayala filed the instant

action to compel DHS to explain its reasons, such that he could file a "meaningful"

administrative appeal.  Before this Court are DHS's motion to dismiss or, in the alternative, for

summary judgment (ECF No. 14) and Bayala's motion for summary judgment (ECF No. 18).

Having reviewed the parties' submissions, this Court grants DHS's motion and denies Bayala's

motion, and dismisses the complaint for failure to exhaust administrative remedies.

## II.  BACKGROUND

Bayala is a citizen of Burkina Faso seeking asylum in the United States.  *See* Compl. ¶ 1,

ECF No. 1.[1]  In November 2013, Bayala submitted a FOIA request seeking an asylum officer's

---

[1] Because this Court resolves this case under Federal Rule of Civil Procedure 12(b)(6), the factual overview herein
draws from the compliant and exhibits attached to the complaint. *See Brass v. Am. Film Technologies, Inc.*, 987

notes, the officer's Assessment to Refer memorandum, and other previously undisclosed materials. *See* Compl. ¶¶ 24–25; FOIA Request, Compl. Ex. 1, ECF No. 1-1.[2] The following month, a DHS representative sent Bayala responsive information on a compact disc, along with a cover letter. Compl. ¶ 27. The letter stated that DHS had decided to withhold certain responsive materials in part or in full, and to submit others to the Department of State and U.S. Immigration and Customs Enforcement ("ICE") for further consideration. *See* Letter from Jill A. Eggleston, Director, FOIA Operations, U.S. Citizenship and Immigration Services, to David L. Cleveland, Counsel for Florent Bayala (Dec. 17, 2013), Compl. Ex. 2, ECF No. 1-2 ("DHS Letter"). The asylum officer's notes and Assessment to Refer were withheld in full, and the letter explained that such documents "contain no reasonably segregable portion(s) of non-exempt information." *Id.* Moreover, the letter listed and described four statutory exemptions that it claimed were "applicable" to the withheld information.[3] Lastly, the cover letter advised Bayala of his right to an administrative appeal. *Id.*

Bayala then filed the instant action without pursuing an administrative appeal.[4] Bayala's complaint claims that DHS's "vague and cryptic" cover letter rendered an administrative appeal "illusory and a waste of time," such that DHS is "thwarting" Bayala's right to appeal. Compl. ¶ 3. The complaint's first cause of action alleges that DHS's letter provided inadequate "reasons" for the withholding determinations, in violation of 5 U.S.C. § 552(a)(6)(A)(i). Compl.

---

F.2d 142, 150 (2d Cir. 1993) (limiting bases of Rule 12(b)(6) determinations to complaint's allegations and exhibits attached to or incorporated into complaint, among other materials).

[2] *See Abtew v. U.S. Dep't of Homeland Sec.*, No. 13-cv-1566, 2014 WL 2620982, at *1–2 (D.D.C. June 13, 2014) (providing overview of asylum application process and function of Assessment to Refer).

[3] The letter cited 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E), which cover, respectively, inter-agency or intra-agency memoranda or letters; private information in personnel, medical, and similar files; private personal information in law enforcement records; and records or information that would disclose law enforcement techniques and procedures. *See* DHS Letter. The letter also stated that withheld information "may" or "could consist of" various materials typically covered by each exemption. *Id.*

[4] *See* Compl. ¶ 38a ("DHS has not enabled plaintiff to make a meaningful administrative appeal."), ¶ 43 ("[P]laintiff is unable to make a meaningful appeal."); *id.* at 13 (requesting various relief "so that plaintiff may make a meaningful administrative appeal").

¶ 33. The complaint's second cause of action alleges that DHS failed to explain why requested information was not "reasonably segregable" under 5 U.S.C. § 552(b). Compl. ¶ 40. Accordingly, Bayala asks this Court to order DHS to "re-write" the cover letter. *Id.* at 13. The revised letter would describe the documents submitted to the Department of State and ICE and provide "the real reasons" why the asylum officer's notes and Assessment to Refer were withheld and why information was not segregable, such that Bayala could "make a meaningful administrative appeal." *Id.* Bayala further asks this Court to declare that the cover letter violates FOIA, to enjoin DHS from issuing similar letters in the future, and to award reasonable attorney's fees and costs. *Id.*

After Bayala initiated this lawsuit, DHS voluntarily released the asylum officer's notes along with other documents. *See* Def.'s Ex. B, ECF No. 14-2. As a result, Bayala now seeks DHS's reasons for withholding in full "just one document"—the Assessment to Refer. Pl.'s Mem. Opp'n DHS's Mot. Summ. J. 16, ECF No. 16.[5] DHS has filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 14.[6] Bayala has moved for summary judgment. ECF No. 18.

---

[5] *See also* Pl.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 18 ("The Court should remand the case back to the DHS, for it to provide the real reasons why *the assessment* may be exempt and why nothing can be segregated." (emphasis added)). In its papers filed with this Court, DHS has provided substantial reasoning supporting its withholding of the Assessment and its non-segregability determination. *See, e.g.*, Def.'s Mem. Supp. Mot. Summ. J. 8–12, ECF No. 14 (withholding of assessment); Def.'s Reply Pl.'s Opp'n Def.'s Mot. Summ J. 8–9, ECF No. 17 (non-segregability); Def.'s Opp'n Pl.'s Mot. Summ. J. 8–11, ECF No. 19 (withholding of assessment and non-segregability). However, DHS's court filings do not render this case moot because Bayala seeks the specific relief of an amended DHS response letter, along with an injunction barring DHS from issuing allegedly deficient letters in the future. *See Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (explaining that receipt of materials requested under FOIA "will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future" (citation omitted)). Moreover, because Bayala neither seeks disclosure of documents nor disputes the merits of DHS's initial determination, DHS's discussion of the various FOIA exemptions is irrelevant to this case. Pls.' Mem. Opp'n DHS's Mot. Summ. J. 2 (explaining that the applicability of specific exemptions "is not yet before the Court"); *see also* Compl. 13 (requested relief does not include disclosure of documents).

[6] DHS's motion is styled as a "motion for summary judgment." However, in its motion, DHS alternatively contends that "Plaintiff's Complaint Should Be Dismissed for Failure to Exhaust Administrative Remedies." Def.'s Mem. Supp. Mot. Summ. J. 6.

### III. ANALYSIS

As a general matter, plaintiffs challenging an agency's response to a FOIA request must exhaust the administrative appeals process before seeking relief in court. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990). Exhaustion enables an agency "to exercise its discretion and expertise . . . and to make a factual record to support its decision." *Id.* at 61. Furthermore, with the benefit of an administrative appeal, agencies can "correct or rethink initial misjudgments or errors" and promote uniformity in its adjudications. *Id.* at 64–65.

"[C]ourts in this Circuit analyze failure to exhaust administrative remedies motions under Rule 12(b)(6)" because exhaustion is an element of a plaintiff's claim. *Ayuda, Inc. v. Fed. Trade Comm'n*, No. 13-cv-1266, 2014 WL 4829574, at *5 (D.D.C. Sept. 30, 2014) (citing *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating grant of summary judgment and remanding with instructions to dismiss complaint under Rule 12(b)(6) for failure to exhaust administrative remedies)). "[A]s a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Hidalgo*, 344 F.3d at 1258–59 (quoting *Oglesby*, 920 F.2d at 61). The exhaustion requirement is triggered so long as the agency's initial response satisfies basic requirements, such as containing a statement of the agency's "determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i); *Oglesby*, 920 F.3d at 65.

DHS argues that Bayala's complaint must be dismissed because he has failed to exhaust administrative remedies. Def.'s Mem. Supp. Mot. Summ. J. 6–7. Bayala does not contest the general rule that exhaustion is required.[7] Nor does he dispute the fact that he did not pursue an administrative appeal prior to commencing this action. *See supra* note 4. Rather, Bayala

---

[7] *See* Pls.' Mem. Opp'n DHS's Mot. Summ. J. 6 ("[I]n a routine FOIA claim . . ., the requester should first exhaust all administrative remedies before seeking relief in a federal court.").

contends that in this particular case, lack of exhaustion should not prevent him from obtaining judicial relief.

Bayala first submits that the "purposes of exhaustion" would not be served in this case, *Hidalgo*, 344 F.3d at 1259, because DHS's imprecise initial response, if allowed to stand, would prevent Bayala from advancing "targeted and cogent arguments" and thereby preclude a "meaningful" administrative appeal, Pl.'s Mem. Supp. Mot. Summ. J. 4–5. This Court disagrees. Bayala cites cases faulting agencies for inadequate reasons for withholding information, but in all of those cases, the FOIA requesters had exhausted administrative remedies, thereby affording the agency the opportunity "to exercise its discretion and expertise," "to make a factual record," and to "correct or rethink initial misjudgments or errors." *Oglesby*, 920 F.2d at 61, 64.[8] Moreover, Bayala does not allege that DHS would "very likely" uphold its initial decision on appeal, such that requiring exhaustion would be "futil[e] and inefficien[t]." *Ayuda*, 2014 WL 4829574, at *7.[9] At bottom, Bayala assumes that the "purposes of exhaustion" would be served only if he could make "targeted" arguments in an administrative appeal. He fails to cite any authority for this proposition or to explain why an appeal from DHS's letter, as written, would necessarily preclude DHS from "exercis[ing] its discretion and expertise" or "mak[ing] a factual record to support its decision." *Oglesby*, 920 F.2d at 61. In the end, Bayala contends that this Court's "broad equitable powers" can excuse him from the exhaustion

---

[8] Bayala relies on *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1089 (D.C. Cir. 2014) (explaining that administrative remedies were exhausted); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 248 (D.C. Cir. 1977) (same); *Abtew*, 2014 WL 2620982, at *3 (same). Moreover, because district courts review the applicability of FOIA exemptions *de novo*, 5 U.S.C. § 552(a)(4)(B), the initial agency determination's depth and thoroughness are of little ultimate relevance.

[9] *See also Wilber v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (concluding that purposes of exhaustion did not support bar against judicial review where agency accepted and processed appeal, notwithstanding FOIA requester's tardy filing of appeal); *Hull v. I.R.S., U.S. Dep't of the Treasury*, 656 F.3d 1174, 1183 (10th Cir. 2011) (concluding that purposes of exhaustion did not support bar against judicial review where FOIA requester completed administrative appeals process and allowed agency to develop record, but failed to perfect initial request by obtaining third-party consent for release of requested tax records).

requirement, but he has not demonstrated how such an equitable remedy would further FOIA's purposes.  Pl.'s Mem. Supp. Mot. Summ. J. 6–7.[10]

Bayala further contends that DHS failed to provide "the reasons" for its determination, in violation of 5 U.S.C. § 552(a)(6)(A)(i).  Pl.'s Mem. Supp. Mot. Summ. J. 7.[11]  This Court concludes that the cover letter's "reasons" were sufficient to require Bayala to file an administrative appeal.  The letter explained that DHS decided to withhold certain documents in full because they "contain no reasonably segregable portion(s) of non-exempt information."  DHS Letter.[12]  DHS also enumerated FOIA exemptions that it concluded were "applicable" to withheld information—§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  *Id.*  Lastly, DHS explained its reasons for referring certain documents to the Department of State and to ICE—to enable those agencies to provide a "direct response" to Bayala.  *Id.*

In contending that DHS's initial response must explain in greater detail the agency's rationale for applying certain exemptions, Bayala fails to recognize that if the case were to return

[10] *Cf. Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (holding that district court erred in declining to grant equitable relief to FOIA requester where Air Force officers refused to disclose information, notwithstanding Secretary of the Air Force's previous findings that requested information was not covered by FOIA exemptions).

[11] By this argument, Bayala apparently contends that he constructively exhausted administrative remedies.  If DHS had failed to provide "reasons," its initial response would not have complied with the time limit provision of § 552(a)(6)(A)(i) and would have triggered constructive exhaustion, thereby allowing Bayala to ask a court to compel DHS to disclose the information sought.  *See* 5 U.S.C. § 552(a)(6)(C) ("Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions of this paragraph."); *Oglesby*, 920 F.2d at 71.  But curiously, Bayala expressly does not request disclosure in this action.  *See supra* note 5; Pl.'s Mem. Opp'n DHS's Mot. Summ. J. 6 ("Mr. Bayala is not now seeking the release of documents: he is challenging the administrative appeal process employed by the DHS.").  In any event, as explained above, this Court rejects Bayala's contention that DHS failed to proffer "reasons."  To be sure, DHS's letter issued after the twenty day response period permitted by 5 U.S.C. § 552(a)(6)(A)(i).  *See* Pl.'s Statement of Facts ¶¶ 1–2, ECF No. 18-2.  But this delay did not amount to constructive exhaustion because Bayala waited until *after* DHS's late response to file his lawsuit.  *See Oglesby*, 920 F.2d at 66–67, 71.

[12] Thus, DHS's conclusion that no portions of the withheld documents were reasonably segregable *is* the reason for its determination.  Bayala incorrectly construes § 552(a)(6)(A)(i) to require an agency to provide not only the "reasons" for its determination, but also the "reasons for its reasons."  Bayala expressly notes that he is not requesting a *Vaughn* index, correctly recognizing that such a detailed index is often not required to sustain an agency's position on judicial review (let alone in initial agency responses).  Pl.'s Mem. Opp'n DHS's Mot. Summ. J. 15–16 (reviewing cases applying *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).  To the extent Bayala contends that FOIA requires of an initial agency response something more than "reasons" but less than a *Vaughn* index, this Court discerns no such principle in the statute or case law.

to the courts, DHS would not be bound by its initially cited exemptions at all. *See Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988) ("[T]he defendant in a FOIA case may assert new exemptions at the federal district court level . . . not previously asserted at the administrative level, even if the circumstances have not changed in the interim." (citing *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978))). Put differently, the administrative process need not explore all issues or arguments. Nonetheless, Congress has required FOIA requesters to exhaust this process, so long as the agency's initial response contains "reasons" and meets other basic requirements. 5 U.S.C. § 552(a)(6)(A)(i). If Bayala was unhappy with the reasons proffered by DHS, he could have registered this complaint in an administrative appeal rather than filing this action prematurely.[13]

In sum, DHS has complied with its statutory obligations, and Bayala must do likewise by exhausting administrative remedies before seeking judicial review.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment (ECF No. 14) is **GRANTED**, and Plaintiff's motion for summary judgment (ECF No. 18) is **DENIED**.

It is hereby **ORDERED** that Plaintiff's complaint is dismissed without prejudice.

**SO ORDERED**.

Dated: November 4, 2014                                          RUDOLPH CONTRERAS
                                                                United States District Judge

---

[13] Bayala argues that DHS's initial refusal to release the asylum officer's notes was inconsistent with the agency's own litigation position in *Martins v. U.S. Citizenship and Immigration Services,* 962 F. Supp. 2d 1106, 1122–23 (N.D. Cal. 2013) (explaining that agency mentioned the deliberative process privilege only once and "make[s] no attempt to argue for its application"); Pl.'s Mem. Opp'n DHS's Mot. Summ. J. 6; Pl.'s Mem. Supp. Mot. Summ. J. 13. This argument could have been deployed in an administrative appeal to persuade DHS to adopt uniform policies, *Oglesby*, 920 F.2d at 65, and aptly illustrates why Bayala's contention that he was deprived of a "meaningful" appeal is meritless.